UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CARDELL EWING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-CV-1810-ZMB |
| | ) | |
| LARRY D. BERRY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendants' Motion to Dismiss. Doc. 7. The Court dismisses the bulk of Plaintiff Cardell Ewing's claims, as his state tort claims are time-barred, Defendants Anne Precythe and Troy Steele are entitled to qualified immunity, and the petition fails to state a claim for injunctive relief. Only the civil-rights claim against Defendant Larry D. Berry survives dismissal because he has not shown that Ewing failed to exhaust his administrative remedies.

## BACKGROUND

### I. Relevant Facts[1]

In September 2020, Ewing was incarcerated at the Eastern Reception, Diagnostic and Correctional Center (ERDCC). Doc. 5 ¶¶ 1, 20–21. At that time, Berry was a corrections officer at ERDCC, Steele was the Warden of ERDCC, and Precythe was the Director of the Missouri Department of Corrections (MDOC). *Id.* ¶¶ 1, 6, 11. Since then, Defendant Richard Adams has become Warden, and Defendant Trevor Foley has become Director. *Id.* ¶¶ 5, 10. The Warden is responsible for "hiring, training, and managing employees" at ERDCC, while the Director's duties include "comprehensive oversight of MDOC personnel, . . . including hiring, training, and disciplinary action." *Id.* ¶¶ 32–33. "At all times relevant, Defendants were acting under color of state law." *Id.* ¶ 14.

---

[1] As required at this stage, the Court accepts as true the well-pled facts in the Amended Petition. *See* Doc. 5; *infra* at 3.

On September 25, 2020, Berry was delivering food to inmates in B-Wing, where Ewing was housed in solitary confinement. *Id.* ¶¶ 20–21. The door to Ewing's room had a "food hatch" through which food was passed. *Id.* ¶ 22. Berry put food and coffee on a tray and passed it through the food hatch, but Ewing inadvertently spilled the coffee. *Id.* ¶¶ 23–24. In response, Berry sprayed Ewing with pepper spray even though there was a locked door between them. *Id.* ¶¶ 25–26. And while Ewing's hand was still in the food hatch, Berry then kicked the door closed on Ewing's hand, causing lasting nerve damage. *Id.* ¶¶ 27–28, 46. Precythe, Foley, Adams, and Steele received multiple complaints about correction officers using excessive force against inmates "[o]ver the years," but they nonetheless "failed to take adequate measures to prevent use of excessive force by officers," "investigate incidents of excessive force or discipline officers who use excessive force," or "implement remedial measures." *Id.* ¶¶ 29–30, 37.

## II. Procedural History

Four years after the food-hatch incident, Ewing filed this action in state court, *see* Doc. 4, and he amended his petition about a year later, Doc. 5; *see also* Doc. 13-3 (docket from previous iteration of this case). The operative pleading advances eight counts: four civil-rights claims under 42 U.S.C. § 1983 (Counts V–VIII[2]) and four related state tort claims (Counts I–IV). *Id.* ¶¶ 45–102. Steele timely removed this action with consent from the other Defendants. Doc. 1 ¶¶ 14–15. They then jointly moved to dismiss, Doc. 7, arguing that Ewing failed to exhaust administrative remedies, that his tort claims are time-barred, and that the section 1983 claims either fail to state a claim or are barred by qualified immunity, Doc. 8 at 3–11. Ewing concedes that his lone claim against Adams is moot and both negligence claims are time-barred,[3] but otherwise opposed dismissal. Doc. 13 at 7, 14. After Defendants replied, Doc. 17, the motion is ripe for adjudication.

[2] The Amended Petition contains a typographical error, with two counts listed as "Count VII." Doc. 5 at 19–20. For purposes of this order, the second "Count VII" will be referred to as "Count VIII."

[3] Given Ewing's voluntary dismissal of these claims without prejudice, Doc. 13 at 7, the Court will not address them further.

## LEGAL STANDARD

### I. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such motions "is to test the legal sufficiency of the complaint." *Ford v. R.J. Reynolds Tobacco Co.*, 553 F. Supp. 3d 693, 697 (E.D. Mo. 2021). To survive a Rule 12(b)(6) motion, the complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief" and providing notice of the grounds on which the claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). Additionally, the complaint must include sufficient detail to make a claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "[s]pecific facts are not necessary," the plaintiff must include "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quotations omitted). The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *Id.*

At the motion-to-dismiss stage, the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025) (citation omitted). However, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (citation omitted); *see also Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Ultimately, this analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## II. Qualified Immunity

"Government employees sued in their individual capacities under § 1983 may assert the affirmative defense of qualified immunity." *Cannon v. Dehner*, 112 F.4th 580, 585 (8th Cir. 2024) (citation omitted). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020) (citation omitted). As such, qualified immunity shields a government official "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Faulk v. City of St. Louis*, 30 F.4th 739, 744 (8th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "A right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023) (quotation omitted). Moreover, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "Thus, the doctrine of qualified immunity requires an *individualized* analysis of *each* officer's alleged conduct." *Id.* (quotation and alterations omitted).

## DISCUSSION

Defendants are entitled to dismissal of all but one count in the Amended Petition. Ewing's assault and battery claims are time-barred because these torts fall within a one-year statute of limitations, which ran long before he brought this action. Defendants argue that all civil-rights claims should be dismissed due to Ewing's failure to exhaust administrative remedies, but they have not met their burden to show non-exhaustion. Nonetheless, the majority of the federal counts falter on other grounds. Precythe and Steele are entitled to qualified immunity as to their purported failure to train or supervise because the Amended Petition does not establish notice or deliberate indifference. And Ewing fails to state a claim warranting injunctive relief against Foley. Accordingly, only the civil-rights claim against Berry (Count V) survives dismissal.

## I. Statute of Limitations

Berry argues that Ewing's assault and battery claims are time-barred because Ewing did not bring this case within the one-year statute of limitations provided. Doc. 8 at 5–7 (citing MO. REV. STAT. § 516.145). Ewing argues that a two-year statute of limitations applies because Berry was "engaged in a personal frolic" when he injured Ewing, rather than acting in his official capacity. Doc. 13 at 6–7. Berry has the better argument.

Under Missouri law, "all actions brought by an offender . . . against the department of corrections or any entity or division thereof, or any employee or former employee for an act in an official capacity, or by the omission of an official duty" must be brought "within one year." MO. REV. STAT. § 516.145. "The phrase 'act in an official capacity' means that a public servant is acting within the scope of what he or she is employed to do rather than being engaged in a personal frolic." *Bailey v. City of St. Louis*, 713 S.W.3d 585, 589 (Mo. Ct. App. 2025) (citation omitted). "In its plain and ordinary meaning, the phrase is used to delineate between an action performed for work purposes rather than for personal ones." *Id.* (citation omitted). "A fair reading of the petition in its totality [] determine[s] the applicable statute of limitations." *Laramore v. Jacobsen*, 613 S.W.3d 466, 471 (Mo. Ct. App. 2020) (citation omitted).

Ewing's allegations in the Amended Petition cannot be squared with his contention that Berry was engaged in a personal frolic. By his own admission, he was injured while Berry was on duty at his place of employment, in the midst of "delivering food to inmates," and "acting under color of state law." Doc. 5 ¶¶ 14, 20. This conduct is part of what Berry was employed to do—even if his alleged action was improper. *See Southers v. City of Farmington*, 263 S.W.3d 603, 619 n.22 (Mo. Banc. 2008) ("An act that is fairly and naturally incident to the employer's business is not removed from the employer's business because it is mistakenly or ill-advisedly done, unless it arises from a wholly external, independent or personal motive.").

Ewing suggests that "act[ing] out of personal anger . . . rather than in a good faith effort to maintain discipline . . . fall[s] outside official duties." Doc. 13 at 7. But he does not provide authority for that claim, nor does the Amended Petition allege that Ewing acted out of "personal anger." Thus, because the one-year statute of limitations applies and Ewing waited more than a year to bring this case, the remaining tort claims are time-barred.

**II. Individual Versus Official Capacity**

As for the federal claims, the Court notes that the Amended Petition is not consistent in specifying the capacity in which Ewing sues certain Defendants. And this is no small matter, as claims for official versus individual capacity differ "as to the type of conduct that is actionable and as to the type of defense that is available." *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citation omitted).

The Amended Petition initially states that Foley, Precythe, and Steele are "sued in [their] individual and official capacities," Doc. 5 ¶¶ 5, 6, 13, and the case caption also indicates as much, *id.* at 1–2. But in detailing the respective counts, Ewing lists only official-capacity claims against Foley and individual-capacity claims against Precythe and Steele. *Id.* ¶¶ 76–102. And his claim construction does not appear to be an oversight or typographical error—both the section headings and the count-specific prayers for relief track these designations. *Id.* at 16–22. Adding to the confusion, Count VI includes allegations against Precythe and Steele, while captioned as applying only to Foley in his official capacity (and previously Adams). Moreover, Ewing hedges in his response, stating that "Count VI of [the] Amended Complaint *includes* official capacity claims against [] Foley." Doc. 13 at 7 (emphasis added).

If Ewing intended to raise official-capacity claims against Precythe and Steele in Count VI, or individual-capacity claims against Foley, his pleading does not comport with the Federal Rules

of Civil Procedure, which require both "a short and plain statement of the claim" and "a demand for the relief sought." FED. R. CIV. P. 8(a)(2)–(3). The section headings and the count-specific prayers for relief reasonably put Defendants on notice only that Ewing brought official-capacity claims against Foley. *See Cent. Flying Serv. v. StarNet Ins. Co.*, 2013 WL 12253552, at *2 (E.D. Ark. Sept. 19, 2013) ("A long-recognized tenet of pleadings-construction is that a specific allegation controls and limits a general allegation on the same subject matter."); FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."). And while Ewing is free to seek leave to amend his pleading if necessary, the Court will not presently construe his Amended Petition as raising official-capacity claims against Precythe and Steele or individual-capacity claims against Foley.[4]

## III. Exhaustion of Administrative Remedies

Defendants argue that Ewing's remaining federal claims must be dismissed because he "[did] not allege that he exhausted, or even attempted to exhaust, his administrative remedies" and "did not do so . . . as required under the PLRA." Doc. 8 at 3–5. As Ewing observes, he did, in fact, allege exhaustion and that he "filed the required grievances." Doc. 13 at 5. Because Defendants have failed to disprove this claim, the Court rejects their argument at this time.

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As failure to exhaust is an affirmative defense under the PLRA, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Minter v. Bartruff*, 939 F.3d 925, 928 (8th Cir.

[4] The course-of-proceeding test is inapplicable here because Ewing's Amended Petition is not silent about the capacity of the claims. *See Reynolds v. Cook*, 2025 WL 670428, at *1 (8th Cir. Mar. 3, 2025). But even if the Court were to apply the course-of-proceeding test, it would reach the same outcome, particularly considering that Defendants did not address official-capacity claims against Precythe and Steele or individual-capacity claims against Foley, nor has Ewing unambiguously clarified the matter. Doc. 8 at 8–11; Doc. 13 at 7; *see S.A.A. v. Geisler*, 127 F.4th 1133, 1139–40 (8th Cir. 2025) (discussing factors to consider in applying the course-of-proceeding test).

2019) (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Rather, 'the burden of raising and proving the absence of exhaustion' falls to defendants, with inmates required only to meet any evidence presented by the defense." *Ware v. Jordan*, No. 2:24-CV-48-ZMB, 2026 WL 586176, at *3 (E.D. Mo. Mar. 3, 2026) (internal citations omitted).

Defendants have not even attempted to prove that Ewing failed to exhaust his administrative remedies. They merely rely on an unsupported statement that he "did not participate in the grievance process as required under the PLRA."[5] Doc. 8 at 4. But the Amended Petition directly contradicts this assertion, as it expressly alleges that Ewing "has filed the required grievances and exhausted his administrative remedies." Doc. 5 ¶¶ 44. Thus, the exhaustion defense falls short, at least at this stage of litigation.[6]

## IV. Failure to Train or Supervise

For Ewing's failure-to-supervise and failure-to-train claims, Precythe and Steele argue they are entitled to qualified immunity because the Amended Petition fails to "show that [they] had any notice of any unconstitutional conduct by Berry" or "point to any specific policy or custom that [Ewing] takes issue with that [they] instituted." Doc. 8 at 11. Ewing contends that qualified immunity does not apply because they "participated in violating Plaintiff's rights or had 'knowledge of and acquiesced in his or her subordinates' violations.'" Doc. 13 at 13 (citing Doc. 5 ¶ 90). Even after viewing the Amended Petition in the light most favorable to Ewing, the Court finds that Precythe and Steele are entitled to qualified immunity.

[5] Defendants have not attached documentation in support of this defense. *See Elliott v. Wilson*, 2017 WL 1185213, at *8 n.9 (D. Minn. Jan. 17, 2017) (noting that the Eighth Circuit has approved consideration of "underlying administrative documents filed by the parties" when evaluating whether a prisoner exhausted administrative remedies as part of a motion to dismiss). To the extent Defendants have documentation that would conclusively establish that Ewing did not exhaust his administrative remedies, the Court would entertain an early summary judgment motion.

[6] As Defendants have not identified any other grounds for dismissing the section 1983 claim against Berry (Count V), that Count survives dismissal.

"Under § 1983, a claim for failure to supervise requires the same analysis as a claim for failure to train." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013) (quotation omitted). Both claims require the plaintiff to plead facts showing that the defendant "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing [plaintiff's] injury." *See Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018) (internal quotations omitted). "Allegations of generalized notice are insufficient;" notice requires a pattern of conduct "very similar to the conduct giving rise to liability." *Jennings v. Nash*, 2020 WL 234678, at *23 (W.D. Mo. Jan. 15, 2020) (internal citations omitted). Deliberate indifference occurs when, "in light of the duties assigned to specific . . . employees[,] the need for more or different training or supervision is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor] can reasonably be said to have been deliberately indifferent to the need." *S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017) (citation omitted).

The Amended Petition falls well short of alleging that Precythe and Steele were on notice of a pattern of similar unconstitutional acts committed by subordinates. Ewing's conclusory allegation that Precythe and Steele "participated in violating [his] rights . . . [or] had knowledge of and acquiesced in his or her subordinates' violations" is so vague that it cannot provide notice. *See* Doc. 5 ¶ 90. Likewise, the allegation that Precythe and Steele "were aware of the recurrent excessive uses of force at ERDCC," *id.* ¶ 37, is similarly non-descript—to the point that the allegation cannot reasonably be described as alleging "conduct very similar to the conduct giving rise to liability," *see Jennings*, 2020 WL 234678, at *23.

Ewing does identify five instances of misconduct at ERDCC, *see* Doc. 5 ¶ 29, but these are also insufficient to establish a pattern. Similar to the conduct at issue here, two of those incidents

featured allegations of excessive force and the use of pepper spray. *Id.* ¶ 29(a)–(b). But those episodes postdate Ewing's injury, and after-the-fact instances of misconduct cannot provide prior notice of a pattern of unconstitutional acts. *See Winston v. City of St. Louis*, No. 4:24-CV-1390-ZMB, 2026 WL 497057, at *6 (E.D. Mo. Feb. 23, 2026) (citation omitted). The other three incidents involve complaints of excessive force that occurred over an eight-year period preceding Ewing's injury. Doc. 5 ¶ 29(c)–(e). But these incidents are not comparable or frequent enough to establish a pattern. *See Chernyy v. Roesler*, 184 F.4th 1070, 1077 (8th Cir. 2026) ("'[A] series of isolated incidents[] is usually insufficient to infer a pattern,' and pattern evidence must be 'sufficiently egregious' and 'very similar to the conduct giving rise to liability.'" (citation omitted)); *see also Winston*, 2026 WL 497057, at *6 (collecting cases concerning the numerosity required to establish a pattern).

Ewing also contends that "deliberate indifference can be established without notice if the inadequacy of training is patently obvious and likely to result in constitutional violations." Doc. 13 at 13 (citing *Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019)). While true, Ewing fails to point to any specific training or supervision policy that could have prevented his injury. *See Andrews v. Fowler*, 98 F.3d 1069 (8th Cir. 1996) ("[E]ven if the training was in some manner deficient, 'the identified deficiency in a city's training program must be closely related to the ultimate injury' such that 'the deficiency in training actually caused the police officers' offending conduct."). Instead, Ewing simply makes conclusory assertions that supervision or training was not adequate. *See* Doc. 5 ¶¶ 35, 82, 89, 94, 96–98. Because Ewing has failed to adequately plead either a failure-to-supervise or a failure-to-train claim, Precythe and Steele are entitled to qualified immunity.

## V. Injunctive Relief

Ewing also brings a claim for unconstitutional policies, customs, and practices against Foley in his official capacity, but he seeks only injunctive relief.[7] Defendants argue that Ewing is not entitled to injunctive relief because he "fails to point to any specific policy or custom that actually caused a constitutional violation" or "show that he faces a real and immediate threat of incurring the harm against which he sought protection." Doc. 8 at 8. Ewing contends that "he alleges that MDOC maintains policies or customs that tolerate excessive force, allow use of pepper spray in inappropriate circumstances, and ignore established use-of-force policies." Doc. 13 at 9. Because Ewing has not pled a viable *Monell* claim, he is not entitled to injunctive relief.

"[S]uits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law." *Fond du Lac Band of Chippewa Indians v. Carlson*, 68 F.3d 253, 255 (8th Cir. 1995) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "[S]tate officials sued in their official capacities for injunctive relief are 'persons' under section 1983 because official-capacity actions for prospective relief are not treated as actions against the state." *Nix v. Norman*, 879 F.2d 429, 432–33 (8th Cir. 1989) (citation omitted). That said, "[i]n the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Cook v. City of Pike Cnty.*, No. 2:23-CV-33-SEP, 2024 WL 1217390, at *20 (E.D. Mo. Mar. 21, 2024) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

---

[7] While not addressed by the parties, as a threshold issue, the Court is not convinced that Ewing can bring a *Monell* claim against state officials in their official capacity, even if he seeks only injunctive relief. *See Pearson v. Gittemeier*, No. 2:19-CV-41-RLW, 2022 WL 278750, at *7 (E.D. Mo. Jan. 31, 2022) (finding that plaintiff seeking injunctive relief "may not bring a *Monell* claim against Defendant MDOC or [Wardens] Minor and Weber in their official capacities because *Monell* only applies to municipalities and local governments." (collecting cases)). But even if Ewing is correct that the *Monell* framework is applicable here, *see* Doc. 13 at 8–9, he fails to state a claim.

Ewing claims that Foley either "adopted, implemented, and/or enabled" the following "unconstitutional policies, customs, and/or practices:"

> a. Tolerating and turning a blind eye to the punitive, arbitrary, and malicious use of excessive force by correctional officers throughout its facilities, including at ERDCC;
>
> b. Continued use of force of pepper spray after an inmate becomes compliant and even on inmates locked in a cell;
>
> c. Authorizing the use of force in circumstances where force was not warranted;
>
> d. Ignoring policies in place for the use of pepper spray and the use of force.

Doc. 5 ¶ 78. He also indicates that these policies and customs were the result of a "failure to adequately train, supervise, and control the actions" of MDOC's employees. *Id.* ¶ 81.

Regardless of the flavor of the *Monell* claim, the Amended Petition falls short. First, Ewing has not adequately alleged that the purported pattern of conduct amounts to a policy rather than an unofficial custom. *See Jones v. St. Louis Cnty.*, No. 4:23-CV-594-JAR, 2023 WL 4488371, at *6 (E.D. Mo. July 11, 2023) ("A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." (citing *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992))). As for custom, Ewing has failed to plead facts establishing either notice or numerosity and similarity sufficient for a "continuing, widespread, persistent pattern." *See Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (listing elements for custom liability). Finally, the Amended Petition does not support a claim for failure to train or supervise because Ewing fails to make non-conclusory allegations that establish deliberate indifference or proximate cause. *See Winston*, 2026 WL 497057, at *7 (dismissing supervisory claims where allegations of notice and specific facts about the "relevant training or supervisory deficiencies" were lacking). Thus, Ewing's claim for injunctive relief against Foley cannot survive dismissal.

## CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' [7] Motion to Dismiss. Specifically, the Court **DISMISSES** Counts I, IV, and VI without prejudice and Counts II, III, VII, and VIII with prejudice (with only Count V remaining). The Clerk of Court is directed to terminate Defendants Anne Precythe, Troy Steele, Richard Adams, and Trevor Foley as parties.

So ordered this 25th day of September 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE